UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF VIRGINIA

United States of America,
    Plaintiff,

v.

Pierre Rashad Preston,
    Defendant.

Case No. 7:21-cr-00041 (W.D. Va.)

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

SEP 24 2025

LAURA A. AUSTIN, CLERK
BY: _____
   DEPUTY CLERK

---

## MOTION TO SUPPLEMENT EMERGENCY MOTION FOR IMMEDIATE HEARING AND COMPASSIONATE RELEASE

I. New Documentary Evidence

1.    Since filing, Defendant has obtained and encloses authenticated communications and records establishing that Bureau of Prisons ("BOP") medical staff were on actual notice of his repeated medical complaints—including gross hematuria (blood in urine), severe renal and lower abdominal/back pain, and obstructive urinary distress—yet failed to act with the urgency the standard of care requires.
(Attachment).

---

II. Summary of New Evidence

2.    September 5, 2025 – TRULINCS Sick-Call Message (Attached). Defendant reported  (Though Petitioner dated sick call as 9-6-25 it actually was 9-5-25) urinating blood, lightheadedness, abdominal pressure, and shooting pain to the genital region. Staff minimized the report ("so the only thing new is the blood"), and no emergency response was initiated.

3.    September 9, 2025 – TRULINCS Message to Health Services Administrator (Attached). Defendant again reported urinating blood at 5:00 a.m. that morning, reiterated ongoing pain, and requested urgent care. The Health Services Administrator acknowledged receipt and noted only that the information was "documented in chart,"

with no emergent evaluation ordered.

4.        September 10, 2025 – Medical Call-Out List (Attached). The daily call-out shows who was summoned that day. Despite Defendant's reports on September 5 and September 9 of ongoing hematuria and renal pain, there is no corresponding lab call-out for the next-day lab cycle (Wednesday). This omission evidences a failure to initiate timely laboratory evaluation after notice of gross hematuria.

—————

## III. Materiality

5.        These records are decisive because they:
• Prove actual knowledge by BOP staff of life-threatening warning signs (gross hematuria + flank/groin pain + obstructive symptoms);
• Confirm a deliberate refusal to act with required urgency or to comply with outside-care directives and BOP Program Statements; and
• Corroborate deliberate indifference under Farmer v. Brennan, 511 U.S. 825 (1994), by showing staff knew of and disregarded an excessive risk to inmate health.

—————

## IV. Constitutional Stakes

6.        The supplemental exhibits heighten the urgency for judicial intervention under binding law:
• Carlson v. Green, 446 U.S. 14 (1980) — Bivens remedy lies for deliberate indifference to serious medical needs.
• Farmer v. Brennan, 511 U.S. 825 (1994) — Liability attaches where officials know of and disregard a substantial risk of serious harm.
• Estelle v. Gamble, 429 U.S. 97 (1976) — Deliberate indifference to serious medical needs violates the Eighth Amendment.
• DeShaney v. Winnebago, 489 U.S. 189 (1989) — Custodial detention triggers a constitutional duty to provide medical care.
• Youngberg v. Romeo, 457 U.S. 307 (1982) — Constitution requires professional judgment; substantial departures from accepted standards violate due process.
• Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004) — Failure to follow institutional policies may constitute a due

process violation.

7. Together, the record shows not negligence but willful constitutional violations—departures from professional judgment, refusal to follow policy, and disregard of known, acute risks of renal failure and sepsis.

———

V. Standard of Care: Hematuria, Obstruction, and Renal Risk

8. Gross hematuria is an emergency-flag symptom. Authoritative urological standards require same-day or next-day evaluation with urinalysis, urine culture, renal function tests (BMP/creatinine), and prompt imaging if obstruction is suspected—especially when hematuria is accompanied by flank/back pain, dysuria, or voiding difficulty.

9. Defendant reported gross hematuria on September 5 and again on September 9, with concurrent flank/groin pain and abdominal/back pressure—classic red-flag constellation for obstruction, ongoing infection (pyelonephritis/prostatitis), or evolving renal injury.

10. Delay far exceeded the objective standard. BOP did not draw labs until September 17—a 12-day lapse from the first report of blood in urine. Such delay, in the face of gross hematuria and obstructive symptoms, falls below any reasonable standard of medical care and is per se dangerous.

11. Compounding risk, Defendant had previously sustained acute kidney injury (AKI) and was repeatedly administered ketorolac (Toradol) despite nephrology warnings—an analgesic contraindicated in AKI that increases renal risk. Persisting with non-urgent responses in this clinical context is not professional judgment; it is reckless disregard.

12. The foreseeable harms from such delay—worsening pyelonephritis, obstructive uropathy, accelerated renal scarring, and sepsis—mirror the very harms Defendant has suffered throughout 2025. The Court should treat this pattern as ongoing, not past, risk.

———

VI. Outside-Care Directive, Rerouting to FMC, and Patient Refusal

13. On July 16, 2023, Duke Regional Hospital treated Defendant for severe urological pain and ordered outside follow-up at Triangle Urology (Durham) within one week. BOP Central confirmed that directive in the administrative exhaustion chain.

14. Rather than honor this timely outside referral, FCC Butner rerouted Defendant to FMC Butner internal services. This contravenes the outside-care directive and BOP's own Program Statement 6031.05, which requires honor of outside hospital recommendations absent a medically documented contraindication at an equivalent level of care.

15. The record contains no medically adequate, equivalent-care rationale for rejecting Triangle within one week. To the contrary, the clinical indicators demanded subspecialist follow-through at a higher-level outside provider.

16. Defendant declined FMC treatment for good cause: FMC and BOP staff had already administered contraindicated Toradol after AKI, falsified anesthesiology "clearance," and delayed urgent evaluations. No reasonable patient—facing recurrent renal crises and documented AKI —would elect FMC over a subspecialist outside referral that Duke itself initiated.

17. Under Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024), the Court owes no deference to BOP's self-serving "interpretations" that transmute outside "orders" into optional "recommendations." The Court must construe Program Statements and hospital directives de novo—and here, they require compliance.

18. The refusal to honor Duke's one-week outside referral—paired with a 12-day response lag after gross hematuria—constitutes deliberate indifference and a substantial departure from accepted professional standards.

———

VII. Evidentiary Foundation and Production Orders

19. Authentication. TRULINCS/SENTRY messages and BOP call-out rosters are readily authenticated under Fed. R. Evid. 901(b)(4) (distinctive characteristics; system headers; dates/times; internal routing). They are also maintained in the ordinary course of government operations.

20. Hearsay exceptions. These records are

and 803(8) (public records). In the alternative, the Court may admit them under Rule 807 (residual exception) as trustworthy, material, and more probative than any reasonably available alternative.

21.   No hearsay needed for effect on the listener. The staff responses are independently admissible to prove notice and state of mind (that BOP knew of hematuria and severe pain and nonetheless failed to act with urgency), not for the truth of the medical assertions.

22.   September 17 labs not yet received. Defendant is informed labs were finally drawn on September 17, 2025, but BOP has not produced the results. Given weeks of reported gross hematuria and renal pain, those results likely contain material evidence (e.g., hematuria, proteinuria, renal function changes, inflammatory markers). The Court should order immediate production.

23.   Immediate production (all records since January 2025). Defendant respectfully requests a 24–72 hour order directing BOP to produce to the Court (with copy to Defendant) the following:
• All laboratory results (urinalysis, urine cultures, BMP/creatinine, CBC, inflammatory markers) from January 1, 2025 to present, including the September 17, 2025 results;
• All outside hospital and contractor records (including Duke Regional Hospital, Duke University Medical Center, Triangle Urology Associates, Granville Medical, and any other outside facility or provider involved in evaluation, imaging, anesthesia review, or treatment) from January 1, 2025 to present;
• All anesthesia-related documentation (consult requests, chart reviews, clearances, cancellations, or day-of-procedure plans); and
• All utilization review decisions and communications concerning outside referrals and scheduling.

24.   Adverse inference if non-produced. If BOP cannot promptly produce the September 17 lab results or the outside records identified above, Defendant requests that the Court note the spoliation risk and draw an adverse inference that withheld or missing materials would corroborate Defendant's account of ongoing hematuria, renal compromise, and deliberate indifference.

## VIII. Relief Requested (Narrowly Tailored to Urgency)

25.    File and consider this Supplement and its exhibits forthwith in ruling on the pending Emergency Motion.

26.    Immediate production order (24–72 hours). Direct BOP to produce all materials listed in Paragraph 23 —most urgently, the September 17, 2025 lab results and all outside hospital records—directly to Chambers with a simultaneous copy to Defendant.

27.    Grant emergency relief. In light of the established record (six hospitalizations in 2025, prior AKI, contraindicated Toradol administration, falsified clearances, fabricated "refusals," refusal to honor outside referral, and dangerous delay after gross hematuria), the Court should grant compassionate release immediately under 18 U.S.C. § 3582(c)(1)(A), USSG § 1B1.13, and controlling Fourth Circuit authority (United States v. McCoy, 981 F.3d 271 (4th Cir. 2020)), or, in the alternative, set an emergency evidentiary hearing within seven (7) days with the production orders above in place.

28.    Ancillary orders. The Court may also:
• Prohibit further administration of ketorolac (Toradol) or any other nephrotoxic modality absent express nephrology clearance;
• Direct outside specialist evaluation (Triangle Urology or Duke University Medical Center) pending hearing; and
• Require status updates from BOP medical leadership every 48 hours until final disposition.

———

DECLARATION (28 U.S.C. § 1746)
I, Pierre Rashad Preston, declare under penalty of perjury that the facts stated in this Motion to Supplement and the attached exhibits are true and correct to the best of my knowledge and belief.

Executed this 22 day of September, 2025.

Respectfully submitted,

Pierre R. Preston

Pierre Rashad Preston
Reg. No. 54173-509
FCC Butner – FCI Butner Camp
Old NC Highway 75
Butner, NC 27509

Enclosures: Supplemental Exhibits

TRULINCS 54173509 - PRESTON, PIERRE RASHAD - Unit: BUT-F-C

---

FROM: BUT/Health Systems Administrator
TO: 54173509
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/09/2025 03:42:01 PM

I am in receipt of your correspondence. This information is documented in your electronic health record.

From: ^I PRESTON, ^IPIERRE RASHAD <54173509@inmatemessage.com>
Sent: Tuesday, September 9, 2025 9:09 AM
Subject: ***Request to Staff*** PRESTON, PIERRE, Reg# 54173509, BUT-F-C

To:
Inmate Work Assignment: orderly

today I had a call out for mrs purdy at 630 am upon this I had notified yall that I had urinated blood last friday no one ever called me down that day mrs purdy and mrs neal who seen me first called down inamtes all day and never called to check on me,furthermore today I notified mrs purdy again that i urinated blood again this morning around 5 am she asked how long has blood been in my urine ,i asked her is that rehtorical,i stated to her wed I believe, then she said yall would do lab test on me this week then she asked if i want to get cystocopy done again,i told her no ;she then asked if I wanted a tordol shot like the emergency room gave me and the hospital did,I stated no
----PRESTON, PIERRE RASHAD on 9/5/2025 6:29 AM wrote:

>

went down to medical this morning at 6:10 am and filled out a sick call to let them know that i urinated blood two days ago and have been lightheaded and fog like,also pressure on my lower back,abdomen,and pain shooting to my private parts,and quote mrs neal stated, Preston so the only thing new is the blood
----BUT/Health Systems Administrator on 9/3/2025 10:07 PM wrote:

>

You refused a Cystoscopy procedure on 08.01.2025. You will need to return to sick call for further interventions.

From: ^IPRESTON, ^IPIERRE RASHAD <54173509@inmatemessage.com>
Sent: Wednesday, August 20, 2025 7:34 AM
Subject: ***Request to Staff*** PRESTON, PIERRE, Reg# 54173509, BUT-F-C

To:
Inmate Work Assignment: oderly

and who is my team pcp and what are they names ?
----PRESTON, PIERRE RASHAD on 8/20/2025 6:56 AM wrote:

>

who am i speaking with is this you mrs williams? i would like to know so there is no confusion as to who is stating this!!!if it is you then the last time we spoke i told you what bop policy says and that if an outside doctor refers me to an oustide doctor medical has to honor is or justify why youre not honoring it,and you stated that is correct,it could be many reason you dont have the staff ,you didnt have enough time to make that appointment,an extc,by telling me my pcp team makes the decision, and that if they decide to send me to an local urologist,i wont be refferred to an outside one, you do realize that at this moment youre intentionally refusing to honor dukes recommendation and youre breaking your own policy!!!!
----BUT/Health Systems Administrator on 8/18/2025 2:32 PM wrote:

>
Duke is a contractor that provides recommendations.

Your PCP team makes the decision.

BUT06
PAGE 001

BUTNER MED I FCI

09-09-2025
14:10:30

UNT EQ 6 SCP

| REG NO | NAME | FROM | TO | TIME | CATEGORY(2) WRK ASGN | CATEGORY(3) QTR ASGN |
|---|---|---|---|---|---|---|
| CALLOUTS | FOR 09-10-2025 | | | | | |
| 18069-509 | ADELGLASS | | C-NURSE | 0830 | CHAP CAMP | F01-001L |
| 94042-083 | BAJWA | | LAB REG | 0730 | CAMP EMERG EDUC CAMP | F01-003U |
| 60071-054 | BASTON | | LAB REG | 0730 | FPI SDC | F02-033L |
| | | | C-NURSE | 0800 | FPI SDC | F02-033L |
| | | | C-PA1 | 0900 | FPI SDC | F02-033L |
| 58695-509 | BATES | | SMALLS CHP | 1230 | FCI2 ORD | F07-007U |
| 74486-509 | BRIL | | LAB REG | 0630 | CAMP EMERG CHAP CAMP | F02-025L |
| | | | EDUC DIET | 1430 | CAMP EMERG CHAP CAMP | F02-025L |
| 25718-511 | BUCHAN | | SMALLS CHP | 1230 | FCI ORD | F04-023L |
| 19366-056 | BURTON | | C-NURSE | 0700 | FMC ADM AM | F08-028L |
| | | | EDUC DIET | 1430 | FMC ADM AM | F08-028L |
| 33521-058 | BYRD | | CHAPEL | 1030 | STEAM FIT | F08-034L |
| 04435-511 | CARDENAS | | SMALLS CHP | 1230 | FPI W'HSE | F06-022U |
| 42340-511 | CARTER | | DENTAL | 0930 | AO PEND C | F03-004L |
| 64759-509 | CHANDLER | | CHAPEL | 1030 | CAMP FS AM | F08-024L |
| 09957-084 | CHAVEZ-LOP | | LAB REG | 0630 | FOOD W'HSE | F01-002L |
| 15008-067 | CIAVARELLA | | C-PA1 | 0930 | CAMP FS AM | F03-005L |
| 11880-511 | CLEMONS | | C-PA1 | 1000 | CAMP EMERG FPI SDC | F01-017U |
| 16075-056 | COTTON | | LAB REG | 0630 | RECYCLE | F07-018U |
| 15929-056 | DEBNAM | | C-NURSE | 0700 | CAT ORD E | F02-027L |
| 08159-511 | DEMERGIAN | | LAB REG | 0630 | EDUC CAMP | F04-028L |
| | | | C-NURSE | 0700 | EDUC CAMP | F04-028L |
| 23172-057 | DRAGON | | CHAPEL | 1030 | FPI W'HSE PUP HELPER | F03-001L |
| 34977-058 | FISHER | | DAPC 60 | 1200 | CAMP FS PM | F07-014U |
| 65247-037 | GREEN | | LAB REG | 0630 | CAMP FS AM HAT ORD E | F05-009L |
| 20732-511 | HARDWRICH | | EDUC DIET | 1430 | LSCAPE 2 | F06-028U |
| 20226-074 | HARRIS | | DAPC 60 | 1300 | CAMP EMERG FPI SDC | F07-017U |
| 43412-511 | HARRIS | | CHAPEL | 1030 | LSCAPE 2 | F02-036U |
| 55932-510 | HILL | | SMALLS CHP | 1230 | PUP HANDLR | F03-018L |

G0002    MORE PAGES TO FOLLOW . . .

```
BUTE6                    BUTNER MED I FCI                    09-09-2025
PAGE 002                                                    14:10:30
                         UNT EQ 6 SCP
REG NO    NAME    FROM   TO    TIME   CATEGORY (2)   CATEGORY (3)
CALLOUTS FOR 09-10-2025                WRK ASGN       QTR ASGN
```

| REG NO | NAME | FROM | TIME | WRK ASGN | QTR ASGN |
|---|---|---|---|---|---|
| 95550-509 | HULSE | CHAPEL | 1030 | FPI SDC | F03-003U |
| 53223-511 | INGRAM | C-NURSE | 0630 | LSCAPE 2 | F01-008U |
| | | LAB REG | 0630 | LSCAPE 2 | F01-008U |
| 94307-510 | JACOBS | CHAPEL | 1030 | AO COMP C | F06-027L |
| 66575-056 | JAMES | LAB REG | 0630 | GARAGE 1 | F07-003L |
| | | C-NURSE | 0800 | GARAGE 1 STEAM FIT | F07-003L |
| 22701-040 | JONES | EDUC DIET | 1430 | FPI SDC STEAM FIT | F01-010L |
| 54362-037 | JONES | C-NURSE | 0830 | FPI SDC | F08-035L |
| | | CHAPEL | 1130 | FPI SDC | F08-035L |
| 73028-510 | KHOSROPANA | LAB REG | 0730 | AO COMP C | F03-016L |
| 77405-510 | LEONARD | LAB REG | 0630 | FPI SDC | F01-010U |
| 23612-511 | LESANE | LAB REG | 0630 | LSCAPE 1 | F02-030U |
| 48332-054 | LIOUNIS | SMALLS CHP | 1230 | MAINT OUT2 | F08-032L |
| 73855-511 | LONG | C-NURSE | 0630 | CAMP FS PM | F04-027U |
| 72427-298 | LOVE | LAB REG | 0730 | CAMP FS PM | F04-027U |
| | | LAB REG | 0730 | FOOD W'HSE | F02-024L |
| 26689-017 | LYNCH | C-NURSE | 0800 | FOOD W'HSE | F02-024L |
| 14837-510 | MARTIN | EDUC DIET | 1430 | GARAGE 2 | F02-037L |
| 22814-021 | MCCLOSKEY | C-NURSE | 0830 | FPI SDC | F05-012U |
| | | C-NURSE | 0700 | AO COMP C | F04-031L |
| 10774-058 | MCCONNEYHE | EDUC DIET | 1430 | AO COMP C | F04-031L |
| 60343-510 | MCLAUGHLIN | C-NURSE | 0700 | CAMP EMERG | F08-031L |
| | | DAPC 60 | 1200 | PH OUT DW | F05-017L |
| 09032-509 | MCLEAN | SMALLS CHP | 1230 | PH OUT DW | F05-017L |
| | | CHAPEL | 1030 | CHAP CAMP GYM ORD | F06-037L |
| | | DAPC 60 | 1300 | CHAP CAMP GYM ORD | F06-037L |
| 20275-510 | MONTGOMERY | LAB REG | 0730 | LSCAPE 1 | F02-027U |
| 14605-171 | MOORE | C-NURSE | 0830 | LSCAPE 1 | F02-027U |
| 12720-057 | NEWBOLD | LAB REG | 0630 | PH OUT MW | F01-003L |
| | | C-NURSE | 0700 | CAT ORD E | F02-023L |
| | | LAB REG | 0730 | CAT ORD E | F02-023L |
| 91155-510 | PERRINE | C-PA1 | 0900 | CAT ORD E | F02-023L |
| 23046-510 | PETERSON | LAB REG | 0630 | RECYCLE | F05-010L |
| | | C-NURSE | 0700 | EDUC CAMP | F05-015U |
| 41163-037 | PITTS | C-NURSE | 0830 | EDUC CAMP | F05-015U |
| 80760-065 | REED | CHAPEL | 1130 | FPI SDC | F01-013L |
| | | C-NURSE | 0730 | AO PEND C | F01-016L |
| 07919-094 | RIVERA | SMALLS CHP | 1230 | AO PEND C | F01-016L |
| 95493-510 | ROBLES VAZ | C-NURSE | 0830 | CAT ORD E | F02-028L |
| 28750-510 | RODRIGUEZ | C-PPD | 0630 | CAMP FS PM | F08-022U |
| | | LAB REG | 0630 | CAMP FS PM | F05-004L |
| | | EDUC DIET | 1430 | CAMP FS PM | F05-004L |

G0002        MORE PAGES TO FOLLOW . . .

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF VIRGINIA

Roanoke Division

United States of America

v.

Pierre Rashad Preston

Case No. 4:21-CR-00015

———

## PRO SE SUPPLEMENTAL NOTICE OF CRITICAL MEDICAL EVIDENCE

COMES NOW the Defendant, Pierre Rashad Preston, Reg. No. 54173-509, and respectfully submits this supplemental notice to ensure the Court has before it critical documentary evidence directly tied to the emergency compassionate release motion presently pending.

1. On September 9, 2025, Defendant formally notified FCC Butner Health Services staff in writing that he was urinating blood, experiencing abdominal pressure, flank pain, and pain radiating into his groin and testicles.

2. Defendant specifically identified that medical staff (Nurse Purdy and Mrs. Neal) were notified and failed to escalate or provide urgent treatment. Staff acknowledged the symptoms but deferred only to "labs later this week."

3. The attached TRULINCS record (Exhibit A) confirms this notice, contemporaneous with Defendant's repeated reports of life-threatening renal obstruction and untreated infection risk.

4. Defendant previously transmitted this evidence to appointed counsel, but files it here directly to ensure the Court has a complete record.

5. This evidence independently establishes deliberate indifference under Farmer v. Brennan, 511 U.S.

825 (1994), as BOP staff were subjectively aware of an excessive risk and failed to act. It also underscores the "extraordinary and compelling" circumstances under 18 U.S.C. § 3582(c)(1)(A) warranting immediate relief.

———

Prayer for Relief

Defendant respectfully requests that the Court consider this supplemental evidence in adjudicating the pending Emergency Motion for Compassionate Release and Sentence Reduction, and grant immediate release or set this matter for emergency hearing forthwith.

Respectfully submitted,

Pierre Rashad Preston

Register No. 54173-509

FCI Butner, North Carolina

Dated: _____, 2025

U.S. Department of Justice
Federal Bureau of Prisons
FMC Butner

Request for Administrative Remedy
Part B – Response

Admin Remedy Number:   1251085-F2

This is in response to your Request for Administrative Remedy, 1251085-F2, received on August 15, 2025. You state that you do not agree with the Bureau of Prisons (BOP) policy on outside specialist referrals. As relief, you are seeking immediate compliance with the Duke University Medical Center referral, a written explanation for why the referral was overridden without an equal-level specialist review, and a guarantee that future referrals will be honored.

A review of this matter reveals that on July 16, 2025, you were sent to Duke Regional Hospital for chronic low back and testicular pain. The physician who evaluated you at Duke Regional Hospital recommended you follow up with Federal Medical Center (FMC) Butner within three days, and Triangle Urology Associates-Durham in one week. Once you returned to the facility you were seen by a Registered Nurse (RN) and a physician. It was noted that you ambulated without difficulty and was okay to return to your housing unit. The physician noted that you were referred to urology.

Medical was informed by custody that you refused to follow the NPO (nothing by mouth) instructions after midnight on July 31, 2025, for a procedure scheduled the next day, August 1, 2025. On August 1, 2025, you went to medical to decline your trip to the FMC. An RN informed you that it was likely a urology appointment. You stated, "I was supposed to be seen outside of here" and "I'm not going." You were told to return to medical and sign a refusal form. A Physician Assistant (PA) noted that when you signed the refusal for the cystoscopy, you expressed concern that Duke had referred you to urology for a one-week appointment. A Nurse Practitioner (NP) noted that you declined the procedure because you weren't informed to be NPO the night before. The NP explained that despite this, you could still visit the FMC and potentially proceed with the cystoscopy later that day. You once again declined the procedure, stating that you were supposed to see offsite urology rather than the urologist at the FMC. It was explained that suggestions made by a consultant (ER) need to be reviewed and approved by your medical team before proceeding. You were already being followed by in-house urology for your chronic symptoms and were still under assessment by the onsite urologist, which is why the cystoscopy was needed. Unless there is an emergency or something beyond his scope, you will continue with onsite urology. The NP addressed all your questions, and you signed the refusal for the cystoscopy. The procedure consult was discontinued, and you were instructed to return to sick call for further intervention.

Your request was evaluated consistent with this general guidance: Program Statement 6031.05, Patient Care, pages 47-48, (2) Consultations Between Bureau Providers and Medical Specialists or Contract Medical Services. A physician or APP will review the inmate's EHR and examine the inmate prior to referral to an outside consultant, unless emergency or urgent care necessitates timely access to the consultant. Consultation requests will be submitted for review and disposition by the URC, as outlined in the section on Utilization Management in this Program Statement. If the consultation is provided on-site, consultants having approved computer security clearance may document their findings directly in the EHR. Consultants without security clearance or off-site visits will document via paper. HSU employees will scan a copy of the signed consultation into the EHR. The APP or LIP will electronically review, date, and sign all consultation reports, and document any resulting orders or related consultation requests. The physician is under no obligation to follow consultant recommendations. If the consultant's recommendations are not followed, the physician will document his/her justification in the EHR.