UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF VIRGINIA – DANVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

November 26, 2025
LAURA A. AUSTIN, CLERK
BY:
    s/B. McAbee
    DEPUTY CLERK

v.

PIERRE RASHAD PRESTON,

    Defendant.

Criminal No. 4:21-CR-00015-EKD

MOTION FOR RECONSIDERATION ON CONSTITUTIONAL GROUNDS

AND TO CORRECT MANIFEST INJUSTICE

Defendant, Pierre Rashad Preston, respectfully moves this Honorable Court to reconsider its Memorandum Opinion and Order entered October 24, 2025 (Dkt. 100), as well as its subsequent Memorandum Opinion and Order entered November 17, 2025 (Dkt. 107), denying compassionate release and denying renewed relief. This motion is brought not under Federal Rule of Civil Procedure 59(e), but under the Court's inherent constitutional authority to correct clear error, prevent manifest injustice, and protect ongoing constitutional rights. See United States v. Dieter, 429 U.S. 6, 8 (1976); Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863–64 (1988); Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991).

Mr. Preston submits that, as the record now stands,

continued denial of relief in the face of unrebutted evidence of Eighth Amendment medical abuse, due process violations, and the government's omission of material facts is inconsistent with the Constitution, the judicial oath, and the appearance of justice required of Article III courts.

## I. INTRODUCTION AND CONSTITUTIONAL POSTURE

This is no longer a routine "compassionate release" dispute. The record in this case now reflects:

1.     Documented Acute Kidney Injury ("AKI"), pyelonephritis, and sepsis diagnosed at Granville Medical Center on January 30, 2025, before the sequence of Toradol administrations;

2.     Repeated administration of ketorolac (Toradol) in February 2025 by BOP medical staff despite known AKI and explicit specialist warnings to avoid NSAIDs;

3.     Specialist notes from Duke Regional Hospital attributing Mr. Preston's renal deterioration to "significant Toradol exposure";

4.     Mr. Preston's ongoing exposure to the same institution and actors whose conduct allegedly caused or aggravated his renal injury;

5.     A government response that focused almost entirely on alleged later "refusals of care" while omitting the earlier, more serious medical abuses; and

6.     A denial of release in which the Court expressly "assumed, without deciding," that extraordinary and compelling circumstances existed and then relied on 18 U.S.C. § 3553(a) factors without resolving the underlying constitutional violations. See Dkt. 100 at 12–15; Dkt. 107.

As a result, Mr. Preston remains incarcerated under the custody and medical control of the very system that, according to unrebutted medical evidence, subjected him to medically contraindicated treatment and serious, potentially permanent injury. Under any reasonable, objective standard, no person should be forced to remain in the

custody of their abusers and be compelled to seek life-sustaining care from those same abusers. To do so is not only medically irrational; it is constitutionally intolerable.

The Constitution is the supreme law of the land, and all statutes, including § 3582(c)(1)(A) and § 3553(a), derive from and are subordinate to it. U.S. Const. art. VI; Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177–80 (1803). When ongoing violations of the Eighth and Fifth Amendments are credibly shown, a sentencing statute cannot be invoked as a shield to avoid constitutional duty.

This motion therefore asks the Court to reconsider its prior denials on purely constitutional grounds and to grant relief that protects Mr. Preston's life, health, and rights.

## II. THE COURT'S INHERENT AUTHORITY TO RECONSIDER

## CONSTITUTIONAL ERRORS AND MANIFEST INJUSTICE

Federal courts possess inherent authority "to rectify their own mistakes in the interest of justice." Dieter, 429 U.S. at 8. That authority is at its apex when constitutional rights are at stake. See Liljeberg, 486 U.S. at 864 (vacatur appropriate to maintain public confidence in the judiciary); Chambers, 501 U.S. at 44–46 (recognizing inherent power to address abuses of the judicial process).

This motion is not a re-argument of routine sentencing factors. It is a request that the Court exercise its inherent Article III power to:

1. Correct clear error in its treatment of undisputed medical evidence;

2. Remedy manifest injustice in continuing to confine Mr. Preston under the control of his medical abusers; and

3. Address the appearance that constitutional violations, once fully presented, were effectively set aside

The Court's prior acknowledgment that it could "assume, without deciding," that extraordinary and compelling reasons existed, and yet deny relief solely on § 3553(a), elevates statutory considerations above unresolved constitutional harms. See Dkt. 100 at 12–15. Under the supremacy of the Constitution and the judicial oath codified at 28 U.S.C. § 453, that sequence must now be revisited.

## III. EIGHTH AMENDMENT: DELIBERATE INDIFFERENCE AND CONTINUING DANGER

The Supreme Court has long held that deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). Under Farmer v. Brennan, 511 U.S. 825, 834–40 (1994), officials violate the Eighth Amendment when they know of and disregard an excessive risk to inmate health or safety. Carlson v. Green, 446 U.S. 14 (1980), recognizes a Bivens remedy for precisely this kind of medical abuse by federal actors.

Here, the record already before the Court and the government shows:

1.    A pre-existing AKI diagnosis: On January 30, 2025, Granville Medical Center records diagnosed Mr. Preston with AKI, pyelonephritis, and sepsis. Renal compromise was not speculative; it was known.

2.    Contraindicated Toradol administration: Despite this diagnosis and later specialist warnings, BOP medical staff administered Toradol (ketorolac) in approximately 30 mg doses on multiple days in early February 2025.

3.    Specialist attribution: Duke Regional Hospital physicians later associated Mr. Preston's renal injury with "significant Toradol exposure," making the causal link explicit in the medical record.

4.    Ongoing pain and instability: Mr. Preston has

repeatedly reported severe pain, blood in urine, and ongoing symptoms consistent with continuing renal risk and potential deterioration.

Under Estelle and Farmer, these facts satisfy the elements of deliberate indifference:

(1) a serious medical need;

(2) knowledge by officials of that serious risk; and

(3) disregard of the risk by providing contraindicated medication and failing to protect the patient thereafter.

Helling v. McKinney, 509 U.S. 25, 33 (1993), further holds that the Eighth Amendment protects against exposure to conditions that pose an unreasonable risk of serious damage to future health. Mr. Preston is not only a victim of past medical abuse; he remains exposed to future medical danger at the hands of the same institution that misused Toradol despite AKI and specialist warnings.

Forcing him to rely on his abusers for further life-sustaining care is, in effect, a form of continued punishment through fear and exposure. That is more than a "disagreement over treatment." It is an ongoing constitutional violation.

## IV. DUE PROCESS AND THE APPEARANCE OF JUSTICE

The Fifth Amendment's Due Process Clause forbids governmental conduct that "shocks the conscience" or evidences deliberate disregard for protected rights. County of Sacramento v. Lewis, 523 U.S. 833, 846–49 (1998). Due process also demands that courts not become passive conduits for executive misconduct.

In re Murchison, 349 U.S. 133, 136 (1955), teaches that "justice must satisfy the appearance of justice." When a record shows:

A federal inmate repeatedly hospitalized, diagnosed with AKI, and exposed to contraindicated medication by federal medical staff;

2.     A government response that omits and downplays this medical abuse while focusing almost exclusively on later "refusals";

3.     A court that assumes extraordinary and compelling circumstances, but denies relief without squarely addressing the constitutional violation; and

4.     The continued confinement of that inmate under the same medical authority,

the appearance of justice is strained, if not extinguished.

Napue v. Illinois, 360 U.S. 264, 269–70 (1959), makes clear that due process is violated when the government allows false or misleading impressions to stand uncorrected. Here, by failing to candidly present and engage the full medical record of abuse, and by centering its argument on later refusals divorced from that abuse, the government created a materially incomplete picture. The Court's continued reliance on that picture, even after Mr. Preston's clarifications and duty-of-candor notice, heightens the due process concern.

## V. THE "REFUSALS" RATIONALE IS LEGALLY AND FACTUALLY UNTENABLE

The government's primary asserted justification for denying relief has been that Mr. Preston later "refused" certain care or procedures. But the undisputed sequence is this:

1.     Abuse first: Toradol was administered after AKI was diagnosed and after specialists warned against NSAID use.

2.     Harm evident: Mr. Preston's renal function worsened, and specialist notes linked that deterioration to "significant Toradol exposure."

3.     Refusal later: Only after suffering serious

injury at the hands of BOP providers did Mr. Preston become understandably hesitant to submit to further invasive interventions from the same system.

Under a reasonable objective standard, a person who has been medically abused by a provider is not "unreasonable" or "noncompliant" for refusing to place his life and organs back into the hands of his abuser. That is self-preservation, not obstruction.

To characterize such refusal as undermining his constitutional claim inverts the logic of Farmer and Estelle. Once the State has shown itself willing to endanger an inmate's life through contraindicated treatment, the burden cannot be shifted onto the inmate to prove his loyalty to his abusers as a condition of constitutional protection.

## VI. CONTINUAL CONFINEMENT WITH THE ABUSERS IS ITSELF CRUEL AND UNUSUAL

Mr. Preston is not only under the legal custody of the Bureau of Prisons; he is medically dependent on its staff. Every severe pain episode, every sign of sepsis, every possible obstruction forces him to make an impossible choice:

1. Seek treatment from those who previously harmed him and risk further abuse; or

2. Endure the pain in silence and risk collapse.

Under a reasonable standard of objectivity, no person should be forced to remain in the physical custody and medical power of those who have already inflicted serious, documented harm. That is not "status quo"; it is a continuing condition of psychological and physical coercion, incompatible with the Eighth Amendment.

By declining to grant relief or fashion any protective order while fully aware of this dynamic, the Court has, in effect, left Mr. Preston without any safe avenue to protect his

## VII. THE COURT'S RELIANCE ON § 3553(a) CANNOT OVERRIDE CONSTITUTIONAL DUTIES

In its prior rulings, the Court "assumed, without deciding," that the medical circumstances might qualify as extraordinary and compelling, and then denied relief based on § 3553(a) factors such as the nature of the offense, deterrence, and avoidance of disparities. See Dkt. 100 at 12–15; Dkt. 107.

But § 3553(a) is a sentencing guidepost, not a constitutional escape hatch. When continued confinement perpetuates a constitutional violation, § 3553(a) must yield to the higher law of the Constitution:

1.    "Just punishment" cannot include cruel and unusual punishment.

2.    "Respect for the law" cannot include tolerating medical abuse by federal actors.

3.    "Protection of the public" is not advanced by exposing an inmate to grave medical danger.

Where the statutory factors and constitutional protections collide, the Constitution must control. Brown v. Board of Education II, 349 U.S. 294, 300–01 (1955) (courts may not permit constitutional violations to continue because remedies are inconvenient). Continuing to deny relief while Mr. Preston remains under the medical control of his abusers is precisely the kind of situation the Constitution is designed to prevent.

## VIII. EVIDENTIARY RECORD IS ALREADY BEFORE THE COURT

All medical evidence supporting Mr. Preston's claims is already part of the district court record, including but not limited to:

AKI, pyelonephritis, and sepsis (January 30, 2025);

2. Duke Regional Hospital discharge summaries and specialist notes expressly linking renal injury to significant Toradol exposure;

3. BOP medical encounter notes and medication logs reflecting Toradol doses after AKI diagnosis and contrary to specialist recommendations;

4. Mr. Preston's sworn filings detailing his symptoms, hospitalizations, and ongoing pain;

5. The government's own filings and the Court's prior opinion (Dkt. 100), which acknowledge, but do not fully remediate, these facts.

Mr. Preston does not seek to relitigate the existence of this evidence; he seeks constitutional relief in light of it. To the extent the Court might suggest that he must "re-attach" what is already in the record, such a requirement would be formalistic and contrary to the reality that the evidence is in this Court's possession and has been cited in the prior motions and opinions.

## IX. REQUESTED RELIEF

In light of the foregoing, Mr. Preston respectfully prays that this Honorable Court:

1. Reconsider its Memorandum Opinion and Order dated October 24, 2025 (Dkt. 100), and its Memorandum Opinion and Order dated November 17, 2025 (Dkt. 107), on constitutional grounds;

2. Find that continued confinement under the custody and medical control of the same actors and institution that subjected Mr. Preston to documented medical abuse and ongoing danger violates the Eighth and Fifth Amendments;

3. Grant compassionate release forthwith, or in the alternative, order immediate transfer to a non-BOP medical facility or non-abusive custodial setting where his health can be protected pending further proceedings;

Alternatively, set this matter for an expedited evidentiary hearing on the constitutional issues, with authority to order interim protective relief, including independent medical evaluation and treatment outside of BOP custody; and

     5.     Grant such other and further relief as justice, the Constitution, and the appearance of justice require.

## X. DECLARATION UNDER 28 U.S.C. § 1746

I, Pierre Rashad Preston, declare under penalty of perjury that the foregoing motion and the facts stated herein are true and correct to the best of my knowledge, information, and belief. I make this declaration pursuant to 28 U.S.C. § 1746, fully aware of the penalties for false statements, and solely for the purpose of seeking protection of my constitutional rights and personal safety.

Executed on __November 21,__ , 2025, at FPC Butner, North Carolina.

*Pierre Rashad Preston*

Pierre Rashad Preston

Reg. No. 54173-509

FPC Butner

P.O. Box 1000

Butner, NC 27509

(Pro se, with assistance of advisory litigation support)

## XI. CERTIFICATE OF SERVICE

Because Mr. Preston is an indigent, incarcerated litigant proceeding pro se, he respectfully requests that the Clerk of

Court served copy of this Motion for Reconsideration on Constitutional Grounds on counsel of record for the United States pursuant to the Court's usual practices.

I certify that on this __21__ day of __November__, 2025, I placed this Motion in the institutional legal mail system at FPC Butner, addressed to:

United States District Court

Office of the Clerk

210 Franklin Road, Room 540

Roanoke, VA 24011

*Pierre Rashad Preston*

Pierre Rashad Preston

Reg. No. 54173-509